**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERTO RODRIGUEZ, *on behalf of himself, FLSA Collective Plaintiffs, and the Class*, | |
| Plaintiff, | Case No.: |
| v. | |
| CHELSEA PANTRY CORP., KATSU-HAMA USA, LLC d/b/a KATSU-HAMA, and BYUNG SIK LIM a/k/a BRUCE LIM, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| Defendants. | **Jury Trial Demanded** |

  Plaintiff, Roberto Rodriguez ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Collective and Class Action Complaint against Defendants, CHELSEA PANTRY CORP. d/b/a CHELSEA PANTRY CAFE, KATSU-HAMA USA, LLC d/b/a KATSU-HAMA ("Corporate Defendants"), and BYUNG SIK LIM ("Individual Defendant LIM" or "Defendant LIM," and together with Corporate Defendants, "Defendants") and states as follows:

<u>**INTRODUCTION**</u>

  1.  Plaintiff alleges, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and other similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving; (2) liquidated damages; and (3) attorney's fees and costs.

  2.  Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages,

including overtime, due to timeshaving; (2) statutory penalties; (3) liquidated damages; and (4) attorney's fees and costs.

3.      Plaintiff further alleges, on an individual basis, that Defendants violated the New York City Earned Safe and Sick Time Act, ("ESSTA"), when they denied Plaintiff his rights under the ESSTA by denying his request for sick leave. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C § 216(b), 28 U.S.C §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C § 1391.

## PARTIES

6.      Plaintiff ROBERTO RODRIGUEZ is a resident of New York Country, New York.

7.      Defendants collectively own and operate restaurants at the following locations in New York City:

(a) Cafe Alice – 5 E 47th St New York, NY 10017; (currently closed)

(b) Chelsea Pantry Café – 405 W 23rd St New York, NY 10011; and

(c) Katsu-Hama – 11 E 47th St New York, NY 10017.

(collectively, the "Restaurants")

8.      Corporate Defendants own and operate the Restaurants as a single integrated enterprise, under the control of their owner, Individual Defendant LIM. Specifically, Corporate

Defendants are engaged in related activities, share common ownership, and have a common business purpose:

    (a) The Restaurants are under the control of Corporate Defendants and Individual Defendants. Specifically, Individual Defendants LIM own and operate all the Restaurants. *See* **Exhibit A**, the liquor license for Katsu-Hama which shows Individual Defendant LIM as principal.

    (b) The Restaurants share a common management as managers were interchangeable among all locations. Specifically, based on Plaintiff's personal observations, Manager Jeffrey [LNU] managed all the Restaurants.

    (c) The Restaurants also share employees. Plaintiff personally observed employees being transferred by Individual Defendant LIM from one Restaurant to another. Moreover, Plaintiff himself was transferred between Restaurants. Plaintiff worked for Café Alice from January 2004 to December 2023. However, when Café Alice closed its business, Plaintiff was transferred by Individual Defendant LIM to Chelsea Pantry Café. Based on Plaintiff's personal observations and conversations, other employees, such as Leonardo [LNU], Reynaldo [LNU], Hugo [LNU], were also transferred from Café Alice to Chelsea Pantry Café by Individual Defendant LIM when the former closed down.

    (d) Additionally, the Restaurants also shared supplies. Plaintiff was required by Individual Defendant LIM to deliver supplies to all the Restaurants. Plaintiff was required to use Individual Defendant LIM's personal car to transfer

various supplies such as sodas, salad dressings, and ice, among many others, among the Restaurants.

(e) The Restaurants share common payroll policies and have a single, centralized system of labor relations for employees. Based on Plaintiff's experience, personal observations and conversations, all Restaurants have common wage and hour violations. Specifically, all Restaurants implemented an unlawful timeshaving policy. Plaintiff personally experienced and suffered from the same timeshaving policy when he was transferred from Café Alice to Chelsea Pantry Café.

(f) The Café Alice website shows Chelsea Pantry Café as its restaurant location. The Café Alice website also describes Chelsea Pantry Café in its "About Us" section. *See* **Exhibit B;** also available at: http://ordercafealice.com/

9.    Although Plaintiff did not work at Katsu-Hama, it is still appropriately named in this Complaint through the theory of a "single integrated enterprise". All Restaurants shared common ownership, common management, interrelation of operations, and centralized control of labor relations, as illustrated above. The Restaurants share numerous commonalities such as purpose that would classify them as a "single integrated enterprise," including but not limited to, identical illegal wage and hour policies and interchangeability of employees, supplies and managers. Consequently, the Restaurants and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to Class members for whom Plaintiff seeks to represent.

10.    Corporate Defendant CHELSEA PANTRY CORP d/b/a CHELSEA PANTRY CAFE is a domestic business corporation organized under the laws of the State of New York,

with a principal place of business and an address for service of process located at 405 W 23RD St, New York, NY, 10011.

11.     Corporate Defendant KATSU-HAMA USA LLC d/b/a KATSU-HAMA is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 11 E 47th St New York, NY 10017.

12.     Individual Defendant BYUNG SIK LIM a/k/a BRUCE LIM is the owner and executive officer of the Corporate Defendants. Individual Defendant BYUNG SIK LIM exercised control over the employment terms and conditions of Plaintiff, FLSA Collective, and Class members.  BYUNG SIK LIM had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective, and Class members. At all times, employees of each of the Corporate Defendants could complain to BYUNG SIK LIM directly regarding any of the terms of their employment, and BYUNG SIK LIM would have the authority to effect any changes to the quality and terms of employees' employment. BYUNG SIK LIM directly reprimanded any employee who did not perform their duties correctly. BYUNG SIK LIM exercised functional control over the business and financial operations of the Corporate Defendants.

13.     At all relevant times, each Corporate Defendants, was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and regulations thereunder.

14.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

15.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and the Class members were employees of Defendants within the meaning of the FLSA and NYLL. At all relevant times, Defendants were employers of Plaintiff, FLSA Collective Plaintiffs, and Class members within the meaning of the FLSA and NYLL.

16.     At all relevant times, Defendants employed at least thirty (30) employees as defined under the NYLL during the relevant statutory period.

17.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including, but not limited to, catering deliverers, waiters, delivery persons, servers, runners, bussers, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (herein, "FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay employees their proper wages, including overtime, due to timeshaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

20.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. § 216(b). The FLSA Collective

Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

21.     Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt, employees (including, but not limited to, catering deliverers, waiters, delivery persons, servers, runners, bussers, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (the "Class Period").

22.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class.

24.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of: (i) failing to pay wages, including overtime, due to time-shaving; (ii) failing to provide proper wage statements per requirements of NYLL; and (iii) failing to properly provide wage notices to Class members, at the date of hiring and annually, per requirements of NYLL.

25.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

26.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

27.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small, in the sense pertinent to a class action analysis, the expenses and burden of

individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.     Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.     Common questions of fact and law exist as to members of the Class which predominate over questions affecting only individual members of the Class, including but not limited to the following:

    a)  Whether Defendants employed Plaintiff and the Class members within the meaning of the NYLL;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

d) Whether Defendants properly compensated Plaintiff and Class members for all hours worked;

e) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class members for all hours worked, including overtime hours, due to time shaving;

f) Whether Defendants applied improper automatic meal break deductions to the hours worked by Plaintiff and Class members;

g) Whether Defendants provided proper wage statements reflecting all hours worked by Plaintiff and Class members, and other information required to be provided on wage statements on the date of hiring and annually thereafter, as required under the FLSA and NYLL;

h) Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL.

## STATEMENT OF FACTS

*Wage and Hour Claims:*

30. In or around January 2004, Plaintiff was employed as a catering deliverer at Defendants' Café Alice located at 5 East 47th Street, New York, NY 10017. Plaintiff's employment with Cafe Alice terminated in or around December 2023 when Café Alice permanently closed.

31. In or around December 2023, after Café Alice permanently closed, Plaintiff was sent to work by Individual Defendant LIM for two weeks at Chelsea Pantry Café located at 405 W 23rd St New York, NY 10011.

32.    Plaintiff's work consisted of delivering large caterings to clients, setting up the food at the location, then returning after the event had concluded to clean up and pick up any company supplies.

33.    Throughout his employment, Plaintiff was compensated in check weekly by Defendants. Plaintiff was paid the prevailing minimum wage at all relevant times. FLSA Collective Plaintiffs and Class members were paid at a similar wage rate.

34.    Throughout his employment, Plaintiff was scheduled to work at various hours each week, as they were dependent on the number of caterings scheduled that week. From the start of his employment to before the pandemic in or around March 2020, Plaintiff worked five (5) days a week for eight (8) to nine (9) hours a day, for an average of forty-two and a half (42.5) hours a week. During and after the pandemic, on average, Plaintiff worked for five (5) days a week for around seven (7) hours every day for a total of thirty-five (35) hours a week. FLSA Collective and Class members had similar schedules.

35.    Plaintiff regularly worked over forty (40) hours each week prior to the pandemic. However, Defendants failed to compensate Plaintiff for his hours worked in excess of forty (40), as required under FLSA and NYLL. Similarly, FLSA Collective Plaintiffs and Class members regularly worked in excess of forty (40) hours per workweek, but never received any compensation for hours worked in excess of forty (40) per week.

36.    Throughout Plaintiff's employment, Defendants would require Plaintiff to clock out prior to his last delivery at least twice a week. He was instructed by Individual Defendant LIM, "just clock-out now and just go home after your delivery". Each delivery would usually take around one (1) hour to complete. Therefore, Plaintiff worked at least two (2) completely uncompensated, off-the-clock hours a week throughout the entirety of his employment.

Similarly, FLSA Collective Plaintiffs and Class members were also required to clock-out before their scheduled shifts end but were required to continue working. Thus, FLSA Collective Plaintiffs and Class members were not compensated for all their hours worked.

37.     Additionally, at all times of Plaintiff's employment, Plaintiff was unable to take a free and clear thirty (30) minute meal break each shift because he was always required to work through his break by continuing to engage in catering deliveries. Plaintiff was not paid for this time each shift as his meal break was automatically deducted from his pay. Plaintiff was therefore not compensated for two and a half (2.5) hours each week because of the meal break deduction in his pay.

38.     Throughout his employment, Plaintiff spoke with other employees, including the following:

- "El Chapo" [Last Name Unknown or "LNU"] – grillman;
- Hugo [LNU] – grillman;
- Hector [LNU] – deliveryman; and
- "Pollo" [LNU] - salad preparer.

During work, Plaintiff and these employees often discussed how thirty (30) minutes was automatically deducted from their paychecks for a "meal break" even if they worked through their breaks. Plaintiff would also observe these employees being interrupted by Defendants five (5) to ten (10) minutes into their lunch break to require them to perform work even if they have not finished their meals.  Thus, FLSA Collective Plaintiffs and Class members were also subject to the same improper meal break deduction policy of Defendants. As a result, Defendants timeshaved Plaintiff, FLSA Collective Plaintiffs, and Class members thirty (30) minutes a day because of this policy.

39.     Plaintiff suffered from Defendants' timeshaving policies regardless of the Restaurant he worked. Based on Plaintiff's experience, observations and conversations with co-workers, Defendants implemented the same timeshaving policies at all the Restaurants.

*WTPA Claims*

40.     Plaintiff and Class members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

41.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

42.     Defendants further violated the Wage Theft Protection Act ("WTPA") by failing to provide Plaintiff and Class members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. See *Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time actually worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour actually 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

43.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

44.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

45.    Had the wage statements Defendants provided to Plaintiff and Class members accurately listed the total number of hours Plaintiff and Class members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

46.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

47.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

48.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section

49.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. See *McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

50.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp*., No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr*. N.Y., LLC, 2023 U.S. Dist. LEXIS 122504, *21

---

402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

(S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

51.    Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

52.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. Id. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

53.    The case at bar is somewhat different from Coward inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury."

*Id.* Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiff[] ha[s] standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

54.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

55.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

56.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on

'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii))

57.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class members for all hours worked, including overtime, due to Defendants' policy of timeshaving.

58.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with wage notices upon hiring and annually thereafter as required under NYLL.

59.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with proper wage statements as required under NYLL.

*ESSTA Claims*

60.     Throughout his employment, Plaintiff would at times feel ill or sick, approximately three (3) to four (4) times a year. When Plaintiffs requested a sick leave from Defendants, Defendants always denied his requests. Defendants ordered him to come to work, and told him, "if you stay home you'll get sicker".

61.     Additionally, Plaintiff had hernia surgeries in 2017 and 2022. On both occasions, Plaintiff informed Defendants that he would be needing time off after the surgeries as per doctor's orders. Plaintiff even furnished a doctor's note to Defendants, but Defendants refused to read it. Plaintiff was unable to work for one (1) month after the 2017 surgery and was unable to work for three (3) months after the 2022 surgery. Despite Plaintiff informing Defendants on

both occasions that he would require time off post-surgery, Defendants did not compensate him for any sick leave that Plaintiff took after either surgery.

62.     Plaintiff had already accrued at least forty (40) hours' worth of paid sick leave each year under the ESSTA. However, Plaintiff was always denied his right to use his sick leaves in violation of the ESSTA.

63.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

64.     Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as fully set forth herein.

65.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

66.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

67.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

68.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages, including overtime, to Plaintiff and FLSA Collective Plaintiffs due to time shaving policies.

69.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

70.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages when Defendants knew or should have known such was due.

71.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

72.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

73.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving, plus an equal amount as liquidated damages.

74.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

75.     Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as fully set forth herein.

76.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

77.     At all relevant times, Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper compensation for all hours worked due to a policy of time shaving.

78.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under NYLL.

79.     Defendants knowingly and willfully operated their business with a policy of failing to provide wage notices upon hiring and annually thereafter, as required under NYLL.

80.     Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their (1) unpaid wages, including overtime, due to time shaving, (2) statutory penalties, (3) liquidated damages, (4) reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT III**

**VIOLATION OF THE EARNED SICK AND SAFE TIME ACT**

81.      Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as fully set forth herein.

82.     Defendants knowingly and willfully failed to provide Plaintiff with proper sick leave as required under the ESSTA.

83.     Defendants are employers covered by ESSTA's sick leave provision as an "[a]ll employers shall provide a minimum of one hour of safe/sick time for every thirty hours worked

by an employee, provided that employers with ninety-nine or fewer employees shall not be required under this chapter to provide more than a total of forty hours of safe/sick time for an employee in a calendar year…" NYC ESSTA § 20-913.

84.     Defendants are required to give employees sick leave for "…mental or physical illness, injury or health condition or need for medical diagnosis, care or treatment of a mental or physical illness, injury or health condition or need for preventative medical care." NYC ESSTA § 20-914.

85.     EESTA grants the employee the right to seek relief "for each instance of safe/sick time taken by an employee but unlawfully not compensated by the employer" and "for each instance of safe/sick time requested by an employee but unlawfully denied by the employer and not taken by the employee…" NYC ESSTA § 20-924.

86.     Due to Defendants' ESSTA violations, Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class members, respectfully requests that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including overtime, due to timeshaving under FLSA and NYLL;

d.  An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to FLSA and NYLL;

e.  All applicable compensatory and punitive damages under the ESSTA;

f.  An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

g.  Designation of Plaintiff as Representatives of FLSA Collective Plaintiffs;

h.  Designation of this action as a class action pursuant to F.R.C.P. 23;

i.  Designation of Plaintiff as Representative of the Class; and

j.  Such other and further relief as this Court deems just and proper.

Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all causes of action and issues so triable as of right by jury.

Dated:   September 11, 2024                     Respectfully submitted,
         New York, New York

                                        By:     */s/ C.K. Lee*
                                                C.K. Lee, Esq.

                                                **LEE LITIGATION GROUP, PLLC**
                                                C.K. Lee (CL 4086)
                                                148 West 24th Street, 8th Floor
                                                New York, NY 10016
                                                Tel.: (212) 465-1188
                                                Fax: (212) 465-1181
                                                *Attorneys for Plaintiff, FLSA Collective and the Class*